IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BRENDA TORRES-OLIVERAS,

Plaintiff,

v.                                                    CIVIL NO.: 10-1464 (MEL)

SPECIAL CARE PHARMACY SERVICES,

Defendant.

## OPINION AND ORDER

### I.   PROCEDURAL HISTORY

On May 27, 2010, Brenda Torres-Oliveras ("plaintiff") filed a complaint against her former employer Special Care Pharmacy Services, Inc. ("Special Care Pharmacy" or "defendant") asserting claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* ("ADA"); Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, §§ 146-151 ("Law 100"); Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29, § 185, *et seq.* ("Law 80"); Law No. 115 of December 20, 1991, P.R. Laws Ann. tit. 29, § 194, *et seq.* ("Law 115"); Law No. 44 of July 2, 1985, P.R. Laws Ann. tit. 1, §§ 501, *et seq.* ("Law 44"); and the Constitution of the Commonwealth of Puerto Rico. (Docket No. 2.)  Defendant filed its answer on January 5, 2011.  (Docket No. 25.)

Pending before the court is defendant's motion to dismiss under Fed. R. Civ. P. ("Rule") 12(b)(1) and 12(b)(6).  (Docket No. 13.)  Plaintiff has filed an opposition, and defendant has replied. (Docket Nos. 20; 23.)

1

## II.  FACTUAL BACKGROUND

The court draws the following facts from plaintiff's complaint (Docket No. 2) and treats them as true for purposes of the pending motion:

Plaintiff was diagnosed with depression and bipolar disorder in July 2008.  (Docket No. 2, ¶¶ 9-10.)  Her employer at that time, Special Care Pharmacy, was aware of plaintiff's diagnosis. (Docket No. 2, ¶ 9.)  Plaintiff's physician prescribed a pharmaceutical regimen and instructed her to take a two-week leave of absence from work to recuperate.  (Docket No. 2, ¶¶ 10-11.)  Since plaintiff's condition did not stabilize, her physician instructed her to take several additional leaves of absence from July to November 2008, each lasting between one and two weeks.  (Docket No. 2 ¶ 13.)

On November 18, 2008, following plaintiff's return to work after one such leave of absence, defendant suspended plaintiff without pay for two months.  (Docket No. 2, ¶ 14.)  Plaintiff filed a state administrative charge for discrimination on December 5, 2008.  (Docket No. 2, ¶ 16.)  Upon returning to work on January 16, 2009, plaintiff was demoted, stripped of her duties as team leader, and isolated from co-workers and supervisors.[1]  (Docket No. 2, ¶ 18.)  As a result, plaintiff resigned on January 27, 2009.  (Docket No. 2, ¶ 19.)  On June 15, 2009, plaintiff filed a state administrative proceeding for retaliation.  (Docket No. 2, ¶ 6.)  On March 4, 2010, the Equal Employment Opportunity Commission ("E.E.O.C.") issued a notice of the right to sue.  (Docket No. 2, ¶ 8.)

---

[1] While plaintiff also alleges that defendant denied her request for a reasonable accommodation, the complaint does not indicate what accommodation was requested.  (Docket No. 2, ¶ 18.)

2

### III.    LEGAL ANALYSIS

### A.    Motion to Dismiss Standard Under Fed. R. Civ. P. 12(b)(1) & (b)(6)

Defendant seeks dismissal of this case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failing to state a claim upon which relief can be granted under Rule 12(b)(6). (Docket No. 13.)  When confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), a court "ordinarily ought to decide the former before broaching the latter" since, if subject matter jurisdiction is lacking, an assessment of the merits "becomes a matter of purely academic interest." Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149-150 (1st Cir. 2002) (citations omitted).

A motion to dismiss for lack of subject matter jurisdiction is decided under Rule 12(b)(1). Valentín v. Hospital Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001).  In assessing such a motion, the plaintiff has the burden of establishing that the court has subject matter jurisdiction over the case. Amoche v. Guar. Trust Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009).  Under Rule 12(b)(1), the court must "construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs."  Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998).  In making such a determination, the court may also "review the evidence on record, including affidavits and depositions, as opposed to a dismissal request under any other subsection of Rule 12(b)."  Garcia-Clavelo v. Nogueras-Cartagena, 2010 U.S. Dist. LEXIS 116191, at *5 (D.P.R. Nov. 1, 2010).

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief."  Rodríguez-Ortiz v. Margo

Caribe, Inc., 490 F.3d 92, 95-96 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 599).  In considering such a motion, the court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor.  See Correa-Martínez v. Arrillaga-Belendez, 903 F.2d 49, 51 (1st Cir. 1990).  While Twombly does not require of plaintiffs a heightened fact pleading of specifics, it does require enough facts to have "nudged their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.  Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555.

In Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court upheld Twombly and clarified that two underlying principles must guide this court's assessment of the adequacy of a plaintiff's pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S.Ct. at 1949-50.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 555).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  Iqbal, 129 S.Ct. at 1950 (citing Twombly, 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility.  Iqbal, 129 S.Ct. at 1950.  Determining the existence of plausibility is a "context-specific task" which "requires the court to draw on its judicial experience and common sense."  Id.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' 'that the pleader is entitled to relief.'"  Id. (quoting Fed. R. Civ. P. 8(a)(2)).  Furthermore, such inferences must

4

be at least as plausible as any "obvious alternative explanation." Id. at 1950-51 (citing Twombly, 550 U.S. at 567).

In two recent cases, the First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 2010 U.S. App. LEXIS 25228, at *11 (1st Cir. Dec. 10, 2010) (citing Twombly, 550 U.S. at 556); Ocasio-Hernández v. Fortuño-Burset, 2011 U.S. App. LEXIS 6763, at *24 (1st Cir. Apr. 1, 2011) (citing Iqbal, 129 S.Ct. at 1951). Instead, the court has emphasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Ocasio-Hernández, 2011 U.S. App. LEXIS 6763, at *25 (quoting Sepúlveda-Villarini, 628 F.3d at 29).

**B.      Plaintiff's Claims Under the ADA**

1.      Failure to Exhaust Administrative Remedies

Defendant argues that plaintiff's discrimination and retaliation claims – including her allegation that defendant failed to grant her a reasonable accommodation – should be dismissed under Rule 12(b)(1) because they are based on facts that were never raised at the administrative level. (Docket Nos. 13, pp. 8-14; 23, pp. 4-6.) Plaintiff counters that her administrative claim should not be held to the standards of formal pleading in civil court, but rather – as befits a claim filed by a layperson – should be read liberally and be found to encompass the claims and allegations set forth in the complaint. (Docket No. 20, pp. 2-6.)

It is well-settled that an employee alleging discrimination must file an administrative claim with the E.E.O.C. or with a parallel state agency before bringing a civil action. Thornton v. UPS,

Inc., 587 F.3d 27, 31 (1st Cir. 2009) (citing Bonilla v. Muebles  J.J. Alvarez, Inc., 194 F.3d 275, 277-78 (1st Cir. 1999)).  The administrative claim "provides the agencies with information and an opportunity to eliminate the alleged unlawful practices through informal methods of conciliation, and affords formal notice to the employer and prospective defendant of the charges that have been made against it." Powers v. Grinnell Corp., 915 F.2d 34, 37 (1st Cir. 1990) (internal quotation marks and citations omitted).  In keeping with this purpose, courts have limited the scope of a plaintiff's civil complaint by the filed administrative charge as well as the investigation "which can reasonably be expected to grow out of that charge." Powers, 915 F.2d at 38.  However, "the scope of a civil action is not determined by the specific language of the charge filed with the agency[.]" Thornton, 587 F.3d at 31.  Rather, the court may "look beyond the four corners of the administrative charge to consider collateral and alternative bases or acts that would have been uncovered in a reasonable investigation but still fall within the parameters of the original administrative charge." Thornton, 587 F.3d at 31-32 (citations omitted).

Regarding her discrimination claim, plaintiff stated in her administrative charge that she had been the "victim of discriminatory treatment whenever [she was] perceived to be a handicapped person." (Docket No. 16-1, p. 1.)  In the complaint plaintiff alleges that she is "protected under [the] ADA" because she suffers from depression and bipolar disorder, and that her employer knew of these conditions.  (Docket No. 2, ¶ 9.)  Both the administrative charge and the complaint allege that plaintiff was suspended without pay for two months following her return from a leave of absence due to her medical condition.  (Docket Nos. 2, ¶¶ 13-14; 16-2, p. 1.)  Defendant argues that plaintiff failed to preserve any claim for discrimination based on her actual disability since, in her

administrative charge, plaintiff only claimed to have been "regarded as" disabled.[2] (Docket Nos. 13, p. 10; 23, p. 4.)  However, while plaintiff's choice of words may suggest that she based her claim on the "regarded as" standard, her administrative claim clearly states that plaintiff was suspended due to her "illness-related justified absences." (Docket No. 16-1).  Such a claim does not fall under the "regarded as" standard.  Cf. 29 C.F.R. pt. 1630, App. § 1630.2(l) (explaining that the purpose of the "regarded as" prong is to cover individuals "rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities").  Furthermore, regardless of the basis for disability, both the administrative charge and the complaint premise their discrimination claims on the same alleged action: plaintiff's two-month suspension.  (Docket Nos. 2, ¶ 14; 16-2, p. 1.)  Therefore, any reasonable investigation of plaintiff's administrative discrimination claim would necessarily have covered the same factual allegations set forth in plaintiff's complaint.  Thornton, 587 F.3d at 31-32.

As for plaintiff's retaliation claims, in her administrative charge plaintiff alleged that defendant took unspecified "reprisals" against her for filing administrative discrimination charges. (Docket No. 16-2, p. 1.)  In the complaint, plaintiff alleges that following her suspension, she was demoted, stripped of her duties as team leader, and isolated from her co-workers and supervisors in retaliation for filing administrative charges in December 2008.  (Docket No. 2, ¶¶ 16-18.)  While the administrative claim does not provide the same level of detail as the civil complaint, courts have held that "[a]n administrative charge is not a blueprint for the litigation to follow." Powers, 915 F.2d at 38 (citing E.E.O.C. v. G.E., 532 F.2d 359, 364 (4th Cir. 1976)).  Thus, the administrative charge should not be "treated as a common-law pleading that strictly cabins the investigation that results

---

[2]The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (c) being regarded as having such an impairment."  42 U.S.C. § 12102(1).

therefrom, or the reasonable cause determination that may be rested on that investigation.  The charge merely provides the E.E.O.C. with 'a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices.'"  Powers, 915 F.2d at 38 (quoting G.E., 532 F.2d at 364); see Powers, 915 F.2d at 38-39 (affirming district court finding that bases for failure to hire claim not specifically enumerated in administrative claim could nevertheless be considered since evidence related to those charges could "reasonably ... be expected to have come under administrative investigation").  In view of the foregoing, defendant's motion to dismiss (Docket No. 13) plaintiff's discrimination and retaliation claims under the ADA pursuant to Rule 12(b)(1) is hereby DENIED.

Turning to  plaintiff's allegation that she was denied a reasonable accommodation, in her administrative charge plaintiff indicated that she requested permission to work part-time in order to allow her to pick up her daughter from school, since plaintiff's father had fallen ill and was unable to do it. (Docket No. 16-2, p. 2.)  Plaintiff stated that this request was denied, forcing her to resign. Id.  However, the civil complaint alleges only that plaintiff was denied an unspecified reasonable accommodation and that she was subsequently constructively discharged. (Docket No. 2, ¶¶ 18-19.) Without any detail as to the nature of the requested accommodation, the court cannot determine whether the reasonable accommodation referenced in the complaint is the same as that raised at the administrative level.  Powers, 915 F.2d at 38.  If so, such a claim is not actionable under the ADA, since it is premised on plaintiff's father's illness rather than her own disability.   Martínez-Jordan v. Baxter Healthcare Corp., 608 F. Supp. 2d 224, 241-242 (D.P.R. 2009) (citation omitted). Regardless, plaintiff's claim fails under the Iqbal standard, since the complaint does not adequately allege what accommodation was sought, whether it was reasonable, and on what basis it was denied.

See Iqbal, 129 S.Ct. at 1949 (conclusory statements are not sufficient to demonstrate that a plaintiff is entitled to relief).  In light of the foregoing, to the extent plaintiff asserts a failure to accommodate claim, said claim is DISMISSED for failure to state a claim upon which relief can be granted.

Having denied defendant's motion to dismiss for lack of subject matter jurisdiction, the court now addresses plaintiff's ADA claims on their merits.

2.    Discrimination Under the ADA

The ADA proscribes employers from discriminating against a qualified individual with a disability.  Rivera-Rodríguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 23 (1st Cir. 2001) (citing 42 U.S.C. § 12112(a)).  To establish a claim of disability discrimination under the act, plaintiff must establish: 1) that she is disabled within the meaning of the ADA; 2) that she is able to perform the essential functions of her job, with or without reasonable accommodation; and 3) that the adverse employment decision was based in whole or in part on her disability.[3]   Martínez-Jordan, 608 F. Supp. 2d at 241-242 (citing Phelps v. Optima Health Inc., 251 F.3d 21, 24 (1st Cir. 2001)).

Defendant argues that plaintiff fails to sufficiently plead that she was disabled for purposes of the act or that she was "otherwise qualified to perform the essential functions of the job with or without reasonable accommodation." (Docket No. 13, pp. 14-18); see Martínez-Jordan, 608 F. Supp. 2d at 241-242 (citation omitted).  Plaintiff maintains that her allegations are sufficient since both

---

[3]Effective January 1, 2009, Congress enacted the ADA Amendments Act of 2008, which, *inter alia*, expanded the definition of "disability" under the ADA and explicitly rejected certain elements of the holdings in the previously-controlling cases of Sutton v. United Airlines, 527 U.S. 471 (1999) and Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184 (2002). See ADA Amendments Act of 2008, § 2(b)(2)-(4), Pub. L. No. 110-325, 122 Stat. 3553, 3554 (2008).  The First Circuit has since held that the 2008 ADA Amendments do not apply retroactively.  As all relevant events pertaining to plaintiff's discrimination claim occurred before January 1, 2009, the court will apply the statute as enacted prior to the 2008 amendments to its analysis of this cause of action.  Faiola v. APCO Graphics, Inc., 629 F.3d 43 n.4 (1st Cir. 2010).

bipolar disorder and depression are recognized mental illnesses under E.E.O.C. regulations. (Docket No. 20, p. 5.)

In order for plaintiffs' claim to survive dismissal under the standard set forth in Iqbal, plaintiff must set forth sufficient allegations to plausibly demonstrate that she is entitled to relief. See Iqbal, 129 S. Ct. at 1950. As plaintiff's ADA claims are premised on actual disability, she must establish disability by showing that she has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual[.]" 42 U.S.C. § 12102(1)(A). The complaint, however, pleads disability in a conclusory fashion, and does not establish the severity of plaintiff's impairments nor that plaintiff was even capable of performing the essential functions of her job. (Docket No. 2, ¶¶ 9-15.) To wit, plaintiff alleges that from the date of her diagnosis in July 2008 to November of that year, plaintiff's condition "did not stabilize," requiring plaintiff to take several additional leaves of absence of up to two weeks in duration.  (Docket No. 2, ¶ 13.) Disregarding plaintiff's conclusory allegations, the court thus  finds that the complaint fails to adequately plead either of the first two elements of an ADA claim.  Therefore, as a complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory[,]" plaintiff's discrimination claim under the ADA is hereby DISMISSED.  Romero-Barcelo v. Hernández-Agosto, 75 F.3d 23, 28 n. 2 (1st Cir. 1996) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).  See González v. Schneider Elec. Bldgs. Am., Inc., 2011 U.S. Dist. LEXIS 36733, at *16 (D.P.R. Apr. 4, 2011) (dismissing ADA claim due to plaintiff's failure to establish which "major life activities" were limited by his disability and in what manner they were affected); Del-Villar Rosario v. P.R. Department of Justice, 573 F. Supp. 2d 496, 502-03 (D.P.R. 2008) (same); see also E.E.O.C. v. Supervalu, Inc., 674 F. Supp. 2d

1007, 1011-1014 (N.D. Ill. 2009) (dismissing ADA claim where complaint contains only conclusory allegation that plaintiff was a "qualified individual" under the act, stating "[b]ecause disability, unlike race, can often be a legitimate consideration in employment decisions, a complaint alleging discrimination under the ADA must plead with adequate specificity that the plaintiff is qualified to perform the essential functions of the job with or without reasonable accommodation.")

    3. <u>Retaliation Under the ADA</u>

   The dismissal of plaintiff's cause of action for discrimination under the ADA does not prevent plaintiff from asserting a claim for retaliation under the act. <u>Wright v. CompUSA, Inc.</u>, 352 F.3d 472, 477 (1st Cir. 2003) ("[a]n ADA plaintiff need not succeed on a disability claim to assert a claim for retaliation."). This claim will, therefore, now be addressed.

   The ADA prohibits retaliation against any individual "who made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." <u>Quevedo-Gaitan v. Sears Roebuck de P.R., Inc.</u>, 536 F. Supp. 2d 158, 171 (D.P.R. 2008) (quoting 42 U.S.C. § 12203(a)). To establish a claim of retaliation under the ADA, a plaintiff must show that 1) she engaged in protected conduct, 2) she suffered an adverse employment action, and 3) there was a causal connection between the protected conduct and the adverse employment action.[4] <u>Wright</u>, 352 F.3d at 478. In the context of a retaliation claim, courts have defined adverse employment action as conduct that a reasonable employee would have found materially adverse, meaning that "it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"

---

[4]As previously stated, the ADA Amendments Act of 2008 took effect on January 1, 2009. <u>See</u> ADA Amendments Act of 2008, § 2(b)(2)-(4), Pub. L. No. 110-325, 122 Stat. 3553, 3554 (2008). Since all of defendant's alleged retaliatory conduct occurred after this date, the court will apply the statute as amended to its analysis of plaintiff's claim for retaliation under the ADA.

<u>Morales-Vallellanes v. Potter</u>, 605 F.3d 27, 36 (1st Cir. 2010) (quoting <u>Burlington Northern & Santa</u>

<u>Fe Ry. v. White</u>, 548 U.S. 53, 64 (2006)).

Plaintiff alleges that defendant retaliated against her for filing an administrative claim for discrimination by demoting her, stripping her of her duties as team leader, isolating her from coworkers and supervisors, and denying her a reasonable accommodation.[5]  (Docket No. 2, ¶¶ 16-18.)  Plaintiff claims that these actions created a hostile work environment, leading to her constructive discharge in January 2009.[6]  (Docket No. 2, ¶ 19.)

In this case, it is undisputed that plaintiff's filing of an administrative claim constitutes protected activity.  Regarding the second prong, courts have held that adverse employment actions include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." <u>Moreno-Rivera v. DHL</u> <u>Global Forwarding</u>, 2011 U.S. Dist. LEXIS 7246, at *13-*14 (D.P.R. Jan. 26, 2011) (quoting <u>Marrero v. Goya of P.R., Inc.</u>, 304 F.3d 7, 23 (1st Cir. 2002)).  In light of the liberal pleading standards under Rule 12(b)(6), plaintiff's allegations that she was demoted, stripped of her duties as team leader, and isolated from her co-workers and supervisors satisfy this element.  (Docket No. 2, ¶ 18.)

---

[5] As stated above, to the extent plaintiff raises a failure to accommodate claim, such claim is DISMISSED under the standard set forth in <u>Iqbal</u>.  129 S.Ct. at 1949.

[6] Since plaintiff does not submit any additional allegations in supports of its retaliatory hostile work environment claim, said claim shall be construed as an alternative basis for establishing that plaintiff suffered an adverse employment action.  (Docket No. 2, ¶¶ 18, 27-29; <u>see</u> <u>Quiles-Quiles v. Henderson</u>, 439 F.3d 1, 8 (1st Cir. 2006) ("[t]he adverse employment action requirement may be satisfied by showing the creation of a hostile work environment or the intensification of a pre-existing hostile environment.").  Since the court finds the complaint to adequately set forth an adverse employment action, the retaliatory hostile work environment claim need not be addressed for purposes of the present motion.

Defendant's motion addresses only the third element of a retaliation claim, arguing that the allegations contained in the complaint lack the necessary specificity to provide a plausible basis to infer that any alleged adverse employment action suffered by the plaintiff was due to her filing of administrative charges.  (Docket No. 13, pp. 18-19.)  However, courts have held that "allegations of retaliation occurring in close temporal proximity to an employee's exercising of federally protected employment rights satisf[y] the pleading requirement of alleging retaliation under circumstances giving rise to an inference of discrimination." Rice v. Wayne County, 2010 U.S. Dist. LEXIS 125939, at *8 (W.D.N.Y. Nov. 30, 2010) (citing Kaytor v. Elec. Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010) ("[c]lose temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action")(citations omitted).  In this case – making all inferences in favor of plaintiff – the alleged retaliatory conduct occurred less than six weeks after plaintiff filed an administrative charge, and furthermore, took place immediately upon plaintiff's return from the suspension that prompted the filing of that charge.  (Docket No. 2, ¶¶ 14, 16-18.)  In light of the fact that the First Circuit has found a temporal proximity of two months between an employee's allegations of discrimination and his dismissal sufficient in the summary judgment context to establish a *prima facie* case of retaliation, see Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 224 (1st Cir. 2007), the court finds that this element is satisfied. Therefore, defendant's motion to dismiss (Docket No. 13) is hereby DENIED as to plaintiff's retaliation claim under the ADA.

13

### C.     Supplemental State Claims

Premised on the same set of facts giving rise to her ADA claims, plaintiff asserts pendent state law claims under the following laws: Law 100, Law 80, Law 115, Law 44, and the Constitution of the Commonweclth of Puerto Rico.[7]

Law 100

Puerto Rico's Law 100 prohibits discrimination by an employer in the workplace by reason of age, race, color, sex, social or national origin or social condition, political affiliation, political or religious ideology, or for being a victim or perceived as a victim of domestic violence, sexual aggression or stalking. 29 P.R. Laws Ann. 29 § 146. Plaintiff's claims are premised on allegations of discrimination on the basis of disability, which is not covered by the statute. Therefore, plaintiff's claims pursuant to Law 100 are hereby DISMISSED for failure to state a claim upon which relief can be granted.

Law 80

Law 80 is Puerto Rico's Wrongful Dismissal Act. It provides an employee that is discharged without just cause to receive severance pay from her employer. 29 P.R. Laws Ann. § 185a. For purposes of Law 80, constructive discharge is considered dismissal. Reyes-Ortiz v. Valdes, 2011 U.S. Dist. LEXIS 45898, at *25- (D.P.R. Apr. 28, 2011); see P.R. Laws Ann. tit. 29, § 185(e) ("discharge shall be understood to be ... the resignation of the employee caused by the actions of the employer directed to induce or compel him to resign, such as imposing or trying to impose on him more onerous working conditions, reducing his salary, lowering his category or submitting him to

---

[7]As plaintiff does not specify in her complaint under which section(s) of the Puerto Rico Constitution she is asserting claims, to the extent plaintiff raises state claims other than those specifically addressed herein, such claims are hereby DISMISSED.

14

derogatory criticism or humiliations by deed or word."). The basic elements of a constructive discharge claim are: "(1) considerably serious actions by the employer that create an intimidating; hostile and offensive work environment; and (2) for the employee to have no other available alternative but to resign." Rivera v. DHL Global Forwarding, 536 F. Supp. 2d 148, 156 (D.P.R. 2008). In her complaint, plaintiff alleges that she was demoted, stripped of her duties as team leader, and isolated her from coworkers and supervisors, creating a hostile work environment that led to her constructive discharge in January 2009. (Docket No. 2, ¶¶ 18-19.) While plaintiff's complaint offers little detail as to severity of defendant's alleged retaliatory conduct – and whether it left plaintiff with any alternative but to resign – in light of Rule 12(b)(6)'s liberal pleading standards, and given that defendant does not articulate in its motion a sufficient reason as to why dismissal of this claim is warranted, defendant's motion to dismiss (Docket No. 13) plaintiff's Law 80 claim is therefore DENIED.

Law 115

Plaintiff asserts a retaliation claim under Law 115, which makes it unlawful for an employer to discharge or discriminate against employees because "they offer or attempt to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico." P.R. Laws Ann. tit. 29 § 194(a). In this case, as plaintiff claims that defendant retaliated against her for filing a state administrative charge for discrimination (Docket No. 2, ¶¶ 16-18), defendant's motion to dismiss plaintiff's claim under Law 115 should therefore be DENIED under the same reasoning that was applied to plaintiff's retaliation claim under the ADA.

Law 44

Law 44 "is Puerto Rico's counterpart to the ADA[,]" banning discrimination against individuals with disabilities by any public or private institution.  See Salgado-Candelario v. Ericsson Caribbean, Inc., 614 F.Supp.2d 151, 175 (D.P.R. 2008); P.R. Laws Ann., tit. 1, § 504.  In fact, "Law 44 was intended to harmonize Puerto Rico law with the federal statutory provisions of the ADA." Torres-Alman v. Verizon Wireless Puerto Rico, Inc., 522 F.Supp.2d 367, 401 (D.P.R. 2007) (citing Arce v. ARAMARK Corp., 239 F.Supp.2d 153, 169 (D.P.R. 2003)).  Accordingly, "the elements of proof for a claim under Law 44 are essentially the same as those for establishing a claim under the ADA." Salgado-Candelario, 614 F.Supp.2d at 175 (internal citations omitted).  Courts have thus found claims for discrimination under Law  44 to be coterminous to an ADA claim.  See Ruiz Rivera v. Pfizer, 521 F.3d 76, 87 (1st Cir. 2008).  Considering that this court has held above that plaintiff's discrimination claim under the ADA should be dismissed, plaintiff's Law 44 claim should therefore likewise be DISMISSED.

## IV.    CONCLUSION

In view of the foregoing, defendant's motion to dismiss (Docket No. 13) is hereby GRANTED IN PART and DENIED IN PART, as follows:

•       plaintiff's discrimination claim under the ADA, as well as state claims pursuant to Laws 44 and 100, are hereby DISMISSED for failure to state a claim; and

•       defendant's motion to dismiss is DENIED as to plaintiff's claims for unjust dismissal under Law 80 and retaliation under the ADA and under Law 115.

16

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 6th day of June, 2011.

s/Marcos E. López
U.S. Magistrate Judge

17